MISSOURI PUBLIC SERVICE
COMMISSION, Petitioner,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

Williams Gas Pipelines Central,
Inc., et al., Intervenors.

No. 99–1203.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 16, 2000.

Decided Dec. 15, 2000.

John E. McCaffrey argued the cause for the petitioner. David D'Alessandro was on brief for the petitioner. Kelly A. Daly and Thomas R. Schwarz, Jr. entered appearances.

Lona T. Perry, Attorney, Federal Energy Regulatory Commission, argued the cause for the respondent. John H. Conway, Acting Solicitor, and Timm L. Abendroth, Attorney, Federal Energy Regulatory Commission, were on brief for the respondent. Susan J. Court, Special Counsel, Federal Energy Regulatory Commission, entered an appearance.

Michael A. Stosser, Stanley A. Berman and Adelia S. Borrasca were on brief for intervenor Kansas Pipeline Company. Jane E. Stelck entered an appearance.

Gary W. Boyle and Jay V. Allen entered appearances for intervenor Williams Gas Pipelines Central, Inc.

James F. Moriarty entered an appearance for intervenor Missouri Gas Energy.

Dana Charles Contratto and Herbert J. Martin entered appearances for intervenor Kansas Gas Service Company.

John Justin McNish, Elizabeth Rose Myers–Kerbal and Richard Greer Morgan entered appearances for intervenor Kansas Corporation Commission.

Before: EDWARDS, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Petitioner Missouri Public Service Commission (MoPSC) seeks review of three orders of the Federal Energy Regulatory Commission (FERC or Commission) setting initial rates for natural gas transportation by the Kansas Pipeline Company (KPC or Company).[1] The petitioner argues that FERC failed to demonstrate the approved rates are in the public interest, as required by section 7 of the Natural Gas Act (NGA), 15 U.S.C. § 717f, and failed to reach a conclusion that is the product of reasoned decisionmaking. We agree. Accordingly, we grant the petition for review and remand the case to the Commission for further ratemaking proceedings.

## I.

■ Section 7(c) of the NGA provides that "[n]o natural-gas company . . . shall engage in the transportation or sale of natural gas, . . . unless there is in force with respect to such natural-gas company

a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations." 15 U.S.C. § 717f(c). In order to issue such a certificate, the Commission must find that, among other things, "the proposed service, sale, [or] operation . . . is or will be required by the present or future public convenience and necessity." Id. § 717f(e). Reaching this decision "requires the Commission to evaluate all factors bearing on the public interest." Atlantic Ref. Co. v. Public Serv. Comm'n, 360 U.S. 378, 391, 79 S.Ct. 1246, 3 L.Ed.2d 1312 (1959). More specifically, section 7 imposes on the Commission a duty "to engage in 'a most careful scrutiny and responsible reaction to initial price proposals of producers.' That scrutiny demands attentiveness to the evidence presented by the producer with 'price a consideration of prime importance' in the application of the public convenience and necessity standard." Consumer Fed'n of Am. v. Federal Power Comm'n, 515 F.2d 347, 356 (D.C.Cir.) (quoting Atlantic Ref. Co., 360 U.S. at 391, 79 S.Ct. 1246), cert. denied, 423 U.S. 906, 96 S.Ct. 208, 46 L.Ed.2d 136 (1975).

## II.

KansOk Partnership (KansOk), Kansas Pipeline Partnership (KPP) and Riverside Pipeline Company (Riverside) engage in the transportation of natural gas. Before November 2, 1995 KPP was regulated by the Kansas Corporation Commission (KCC),[2] while KansOk and Riverside were regulated by FERC under section 311 of the Natural Gas Policy Act (NGPA), 15 U.S.C. § 3371. On November 2, 1995 FERC determined that KansOk, KPP and Riverside constituted a single interstate pipeline system subject to FERC jurisdiction under the NGA. See KansOk P'ship, 73 F.E.R.C. ¶ 61,160, at 61,480 (1995).

---

1. The orders under review are *Kansas Pipeline Co.*, 87 F.E.R.C. ¶ 61,020 (Apr. 2, 1999); *Kansas Pipeline Co.*, 83 F.E.R.C. ¶ 61,107 (Apr. 30, 1998); *Kansas Pipeline Co.*, 81 F.E.R.C. ¶ 61,250 (Nov. 25, 1997).

2. KPP operated as a "Hinshaw" pipeline exempt from FERC jurisdiction pursuant to 15 U.S.C. § 717(c).

FERC therefore ordered the three entities, collectively KPC, to apply for a certificate of public convenience and necessity under section 7 of the NGA. *See id.* at 61,488. KPC challenged FERC's assertion of jurisdiction and sought a rehearing, *see Kansas Pipeline Co.*, 81 F.E.R.C. ¶ 61,005, at 61,006 (1997), but, at the same time, on January 23, 1996 filed under protest a certificate application proposing an initial rate base of $100,647,042 and a cost of service of $36,708,843, *see id.* at 61,006–07, 61,017.

On October 3, 1997 the Commission confirmed its November 2, 1995 decision asserting jurisdiction over KPC.[3] *See id.* at 61,036. FERC then proceeded to examine KPC's proposed initial rates, terms and conditions and concluded that the rates were not in the public interest. *See id.* at 61,017. In the end, FERC adopted a rate base of $39,011,785 and a cost of service of $21,817,483. *See id.*

On November 3, 1997 KPC sought rehearing of the October 3, 1997 order. The Company argued that the rates established by the order would drive KPC into bankruptcy because they did not allow KPC to recover its operating expenses and make payments on two outstanding loans. On November 10, 1997 KPC sought a stay of the October 3, 1997 order, which the Commission granted on November 25, 1997. *See Kansas Pipeline Co.*, 81 F.E.R.C. ¶ 61,250, at 62,136 (1997).

On February 27, 1998 KPC filed with the Commission a document titled "Motion of Kansas Pipeline Company Acceding to FERC Jurisdiction, and Requesting Interim Relief, Or, in the Alternative, Request for a Rehearing" in which it made the following proposal: KPC would dismiss its appeal challenging FERC's jurisdiction, *see supra* note 3, if FERC permitted KPC to continue charging the contractual rates that had been agreed to by KPC and its customers and had been approved by

KPC's prior regulators (Motion Rates) until such time as section 4 rates were approved by FERC. FERC agreed with KPC's proposal and on April 30, 1998 issued an order permitting KPC to grandfather its old rates pending a section 4 proceeding. *See Kansas Pipeline Co.*, 83 F.E.R.C. ¶ 61,107, at 61,518 (1998). In support of its decision FERC declared: "As discussed below, the Commission has determined that granting the motion is in the public interest because it will result in rates that are in the public interest, will remove the jurisdictional issue from the proceeding, and preserve the financial integrity of the applicant." *Id.* at 61,505.

FERC's conclusion that the rates are "in the public interest" warrants some explanation. At the beginning of its analysis, the Commission noted that KPC's November 3, 1997 request for rehearing of the October 3, 1997 order was "largely moot" in light of its approval of the Motion Rates. Nevertheless FERC proceeded to discuss the issues raised by the rehearing request in order to "provide a context for our decision to grant the applicant's February 27 motion." *Id.* at 61,506. In the discussion, FERC reversed its October 3, 1997 position on several issues. *See id.* at 61,-506–09. Ultimately, FERC concluded that, if the initial rates set by the October 3, 1997 order were adjusted "based on the rehearing arguments that the Commission found to be persuasive," those rates (Rehearing Rates) would be higher than KPC's Motion Rates. *Id.* at 61,511. Because approval of the Motion Rates also resolved the jurisdictional issue, the Commission concluded that "it is in the public interest to grant Kansas Pipeline's motion." *Id.*

Petitioner MoPSC sought a rehearing of FERC's April 30, 1998 order, challenging FERC's conclusion that the Rehearing Rates would be higher than the Motion

---

**3.** On December 2, 1997 KPC filed a petition for review with this court challenging FERC's decision. *See Kansas Pipeline P'ship v. FERC,* No. 97–1710 (D.C.Cir. Dec. 2, 1997) (voluntarily dismissed on May 8, 1998).

Rates.[4] MoPSC asserted that FERC's analysis was plagued·by numerous errors and unexplained departures from settled FERC polices. On April 2, 1999 FERC denied rehearing, explaining that in the April 30, 1998 order it had not relied strictly on a comparison of the Motion Rates and the Rehearing Rates but rather had "concluded that the motion rates were in the public interest because they were negotiated among the parties and approved by the prior regulatory regime." *Kansas Pipeline Co.*, 87 F.E.R.C. ¶ 61,020, at 61,064 (1999). FERC also emphasized the advantage of the Company's concession on the jurisdiction issue as well as the importance of preserving the Company's financial integrity. *See id.* Unsatisfied, MoPSC filed this petition for review.

### III.

■ We review FERC's orders under the familiar arbitrary and capricious standard of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A); *Williston Basin Interstate Pipeline Co. v. FERC*, 165 F.3d 54, 60 (D.C.Cir.1999). Although "[j]udicial scrutiny under the National Gas Act is limited to assuring that the Commission's decisionmaking is reasoned, principled, and based upon the record," *Columbia Gas Transmission Corp. v. FERC*, 628 F.2d 578, 593 (D.C.Cir.1979); *accord Williston Basin Interstate Pipeline Co.*, 165 F.3d at 60, the Commission's orders must nonetheless articulate "a rational connection between the facts found and the choice made." *Association of Oil Pipe Lines v. FERC*, 83 F.3d 1424, 1431 (D.C.Cir.1996) (citations and internal quotation marks omitted). To carry out our reviewing task, it is imperative that the Commission articulate the critical facts upon which it

relies when it decides [the relevant rates]. Similarly, when the Commission finds it necessary to make predictions or extrapolations from the·record, it must fully explain the assumptions it relied on to resolve unknowns and the public policies behind those assumptions. Where the Commission balances competing interests in arriving at its decision, it must explain on the record the policies which guide it. Only if the Commission observes these minimum standards can we be confident that missing facts, gross flaws in agency reasoning, and statutorily irrelevant or prohibited policy judgments will come to a reviewing court's attention. Moreover, by requiring that the Commission fully articulate the basis for its decision, we assure the Commission, itself, the first opportunity to correct any defects which may emerge from such disclosure.

*Columbia Gas Transmission Corp.*, 628 F.2d ·at 593 (footnote omitted); *accord Great Lakes Gas Transmission Ltd. P'ship v. FERC*, 984 F.2d 426, 432 (D.C.Cir.1993).

■ Defending its approval of the Motion Rates as in the public interest, FERC asserts that it relied on the following grounds: (1) approval of the Motion Rates ended the jurisdictional dispute, thus eliminating regulatory uncertainty and avoiding protracted litigation; (2) the Motion Rates had been negotiated among the parties; (3) the Motion Rates had been approved by KPC's prior regulators; (4) the Commission's adjustment of the October 3 rates preserved KPC's financial integrity and prevented KPC's bankruptcy; and (5) the Motion Rates were lower than the Rehearing Rates. MoPSC challenges each ground.[5]

---

4. MoPSC has standing in this case pursuant to section 15 of the NGA. *See* 15 U.S.C. § 717n ("In any proceeding before it, the Commission in accordance with such rules and regulations as it may prescribe, may admit as a party any interested ... State commission, ... whose participation in the proceeding may be in the public interest."); *see*

*also* 18 C.F.R. § 385.214 (FERC rules of practice and procedure).

5. FERC argues that MoPSC is precluded from mounting a challenge to the first four grounds because it failed to make those arguments in its petition for rehearing as required by section 19(a) of the NGA. *See* 15 U.S.C.

■ In evaluating the Commission's arguments, we bear in mind the "time-honored rule that a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'" *Western Resources, Inc. v. FERC*, 9 F.3d 1568, 1576 (D.C.Cir.1993) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947)). The court does not "give an agency the benefit of a *post hoc* rationale of counsel." *Louisiana Ass'n of Indep. Producers & Royalty Owners v. FERC*, 958 F.2d 1101, 1123 n. 12 (D.C.Cir.1992).

■ In our view, the record does not manifest that FERC originally invoked all of the grounds it now relies on to support its action. First, the Commission did not use the second and third rationales in its April 30, 1998 order. FERC's entire discussion of these two points is contained in one sentence: "In its motion, [KPC] proposes to charge rates that have been negotiated among the parties and approved by the prior regulatory regime, until such time as the Commission directs [KPC] to file a NGA Section 4 rate case." *Kansas Pipeline Co.*, 83 F.E.R.C. ¶ 61,107, at 61,-510. The order does not explain the significance of the two rationales or how they relate to the choice made by the Commission. Moreover, FERC's own conclusion shows no reliance on these factors.[6] Thus, we reach the inescapable conclusion that FERC's reference to the negotiations among parties and to the approval by prior regulators was merely descriptive of the Motion Rates rather than a declaration of what FERC now argues are two of its primary reasons for reaching its decision.

■ As to the first and fourth rationales, the April 30, 1998 order does include them as grounds for the decision. *See Kansas Pipeline Co.*, 83 F.E.R.C. ¶ 61,107, at 61,505 ("[T]he Commission has determined that granting the motion ... will remove the jurisdictional issue from the proceeding, and preserve the financial integrity of the applicant."). A passing reference to relevant factors, however, is not sufficient to satisfy the Commission's obligation to carry out "reasoned" and "principled" decisionmaking. We have repeatedly required the Commission to "fully articulate the basis for its decision." *Columbia Gas Transmission Corp.*, 628 F.2d at 593; *accord Great Lakes Gas Transmission Ltd. P'ship*, 984 F.2d at 432; *City of Charlottesville v. FERC* 661 F.2d 945, 950 (D.C.Cir.1981). Here, the Commission fell short of meeting the "minimum standards" with which it is required to comply. *Columbia Gas Transmission Corp.*, 628 F.2d at 593.

■ Having addressed the first four rationales upon which the Commission relies on appeal, we turn now to the Commission's hypothetical calculation of the Rehearing Rates. The April 30, 1998 order concludes that the Motion Rates are lower than the rates FERC would have approved had it granted a rehearing. *See Kansas Pipeline Co.*, 83 F.E.R.C. ¶ 61,107, at 61,-

---

§ 717r(a) ("The application for rehearing shall set forth specifically the ground or grounds upon which such application is based."). We find no merit in FERC's argument. As is clear from our discussion *infra*, the Commission's April 30, 1998 order did not include all of the grounds it asserts here and, therefore, the petitioner had no reason to question unaddressed matters in seeking rehearing. *See* 15 U.S.C. § 717r(b) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing *unless there is reasonable ground for failure so to do*." (emphasis added)).

6. FERC's conclusion reads:

> A comparison of [the Rehearing Rates] with the proposed motion rates shows that the combined motion rates for the three zones are lower. In addition, approving the motion rates would remove the jurisdictional issue from the proceeding, since [KPC] has agreed to accede to federal jurisdiction if its motion is granted. Under these circumstances, the Commission concludes that it is in the public interest to grant [KPC's] motion.

*Kansas Pipeline Co.*, 83 F.E.R.C. ¶ 61,107, at 61,511.

511. The record makes clear this was the Commission's primary reason for approving the Motion Rates. Nevertheless, both in its April 2, 1999 order and before this court, FERC has avoided defending its computation of the Rehearing Rates, dismissing it as mere "context." *See Kansas Pipeline Co.*, 87 F.E.R.C. ¶ 61,020, at 61,-064. Indeed, during oral argument, FERC counsel could not even assure this court that the Commission's arithmetic in calculating the adjusted hypothetical cost of service was correct. Given that the only record basis on which FERC's decision could be affirmed is minimized by the Commission itself, we are compelled to remand the case to the Commission so that it can reach a conclusion that is the product of reasoned decisionmaking.[7]

We note, however, that our decision does not mean that at least some of the rationales offered by FERC could not support the approval of initial section 7 rates pending a section 4 proceeding. *See Atlantic Ref. Co.*, 360 U.S. at 391, 79 S.Ct. 1246 (approval of certificate of public convenience and necessity "requires the Commission to evaluate all factors bearing on the public interest"); *Tejas Power Corp. v. FERC*, 908 F.2d 998, 1003 (D.C.Cir.1990) ("[T]his court has consistently required the Commission to give weight to the contracts and settlements of the parties before it.") (citing *Union Elec. Co. v. FERC*, 890 F.2d 1193, 1194–95 (1989)); *Jersey Cent. Power & Light Co. v. FERC*, 810 F.2d 1168, 1177–78 (D.C.Cir.1987) ("In reviewing a rate order courts must determine whether or not the end result of that order constitutes a reasonable balancing, based on factual findings, of the investor interest in maintaining financial integrity and access to capital markets and the consumer interest in being charged non-exploitative rates."); *cf. Arctic Slope Regional Corp. v. FERC*, 832 F.2d 158, 167–68 (D.C.Cir.1987) (upholding FERC decision that termination of lengthy litigation served public interest). In this case, however, the rationales fail because FERC has not adequately explained how the rationales, alone or together, satisfy the "public interest" standard of section 7.

For the foregoing reasons, we remand to FERC for further proceedings consistent with this opinion.

*So ordered.*

---

**7.** In view of the Commission's own limited defense of its calculations, we need not reach the merits of MoPSC's related calculations arguments (e.g., rate of return computation, debt prepayment treatment, reliance on stale data) raised in its request for rehearing of the April 30, 1998 order. On remand, if the Commission decides to recalculate the Rehearing Rates, it should consider MoPSC's arguments and, if it chooses to depart from existing applicable ratemaking policies, it must explain its reasoning on the record. *See Great Lakes Gas Transmission Ltd. P'ship*, 984 F.2d at 433 ("A full and rational explanation is especially important to this court when the condition imposed reflects a shift in FERC's policy or a departure from its typical manner of granting certificates and imposing conditions.").